**Esther SEPULVEDA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13-86-268-CR.**

Court of Appeals of Texas,
Corpus Christi.

April 16, 1987.

Gerard C. Miller, Jr., Corpus Christi, for appellant.

Grant Jones, Dist. Atty., Corpus Christi, for appellee.

Before KENNEDY, UTTER and DORSEY, JJ.

## OPINION

KENNEDY, Justice.

Appellant was convicted of fraudulently applying for voter registration and was sentenced to imprisonment for three years in the Texas Department of Corrections. She brings nine points of error. We affirm.

Appellant's first and second points of error challenge the constitutionality of the statute under which she was convicted, article 5.13a of the former Texas Election Code, Act of May 27, 1975, Ch. 296, § 42a, 1975 Tex.Gen.Laws 750, 750–52, *repealed by* Act of May 24, 1985, Ch. 211, § 9(a), 1985 Tex.Gen.Laws 802, 1076 [current version at Tex.Elec.Code Ann. §§ 13.001–13.-007 (Vernon 1986)]. Former article 5.13a, subd. 5 provided:

> Any person who applies for registration of any person, or who signs an application purporting to be the application for registration of any person, either real or fictitious, other than the person making the application or affixing the signature, or someone for whom he may lawfully act as agent, or someone who is unable to sign and who requests him to sign for such other person, is guilty of a felony of the third degree.

Section three provided:

> The husband, wife, father, mother, son, or daughter of a person entitled to register may act as agent for such person in applying for registration, without the necessity of written authorization therefor, may sign for the applicant, and may receive the registration certificate. However, none of these persons may act as agent unless he is a qualified elector of the county. No person other than those mentioned in this subdivision may act as agent for a person in applying for registration. Except as permitted in this subdivision, a person who willfully acts as agent for another in applying for registration or in obtaining a registration certificate is guilty of a Class B misdemeanor.

Appellant argues that the statute is unconstitutionally vague for three reasons. First, she contends that the word "applies" is too vague; second, she asserts that the same conduct can result in a misdemeanor under section three or a felony under section five; and third, since the legislature has rewritten the statute, the legislature recognized that it must have been impermissibly vague.

 Statutes are presumed valid, and the party challenging a statute's constitutionality has the burden to show otherwise. *Ex parte Granviel*, 561 S.W.2d 503, 511 (Tex.Crim.App.1978). A statute is void for vagueness if it fails to give a person of ordinary intelligence fair notice that his or her contemplated conduct is forbidden by statute or if it encourages arbitrary and erratic arrests and convictions. *Cotton v. State*, 686 S.W.2d 140, 141 (Tex.Crim.App. 1985). A statute is not vague or indefinite merely because its words or phrases are not specifically defined. *Morgan v. State*, 557 S.W.2d 512, 514 (Tex.Crim.App.1977). A person who engages in conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. *Clark v. State*, 665 S.W.2d 476, 482–83 (Tex.Crim.App.1984).

 Applying these rules of construction, we overrule appellant's first point of error. First, appellant clearly "applied"

for a voter registration when she turned in the application purporting to be Bernabe Luna's to the Neuces County voter registrar. Where words of a criminal statute are not defined, courts will ordinarily give them their plain meaning. *E.g., Campos v. State,* 623 S.W.2d 657, 658 (Tex.Crim.App. 1981). The word is certainly not vague, but has an ordinary, common-sense meaning.

■ Second, sections three and five do not proscribe the same type of conduct, as appellant argues. Section five governs people like appellant who act without any claim of agency status, while section three governs people who attempt to act as an applicant's agent. From our discussion below of appellant's eighth point of error, it is clear that appellant did not, nor did she purport to, act as Bernabe Luna's agent.

■ Third, the fact that the legislature changed the language of this offense when it recently codified the Election Code obviously does not mean the former election statute was unconstitutionally vague. We overrule appellant's first point of error.

■ In her second point of error, appellant contends that the caption of the 1975 statute in question was defective for failing to provide notice that the bill contained penal provisions. A recent amendment to the Texas Constitution, Tex. Const. art. III, § 35, provides that such a defect no longer renders the statute void. *Baggett v. State,* 722 S.W.2d 700 (Tex.Crim.App.1987). We overrule appellant's second point of error.

■ In her third point of error, appellant contends that she was wrongly convicted under a repealed statute. Article 5.13a of the former Texas Election Code was in effect at the time she committed the act for which she was convicted. Article 5.13a was codified into the current Election Code, effective January 1, 1986. Tex.Elec.Code Ann. § 13.006 (Vernon 1986). Appellant's prosecution was not barred. *Gobell v. State,* 528 S.W.2d 223, 223–24 (Tex.Crim. App.1975). We overrule appellant's third point of error.

■ Appellant, in her fourth point of error, asserts that the evidence is insufficient to prove that she was the person who committed the offense. Appellant argues that "[t]he prosecutor ... never requested the court to announce that the record would reflect an identification, therefore the record is left open to argument as to whether the woman identified was in fact the appellant." Although the State has the burden of proving appellant committed the offense charged, *Miller v. State,* 667 S.W.2d 773, 775 (Tex.Crim.App.1984), the formalized identification procedure suggested by appellant, though desirable, is not necessary. *Purkey v. State,* 656 S.W.2d 519, 520 (Tex.App.—Beaumont 1983, pet. ref'd). Two State witnesses, Alicia Gomez and Rachel Romero, identified appellant for the jury by describing what she was wearing. We find these uncontroverted in-court identifications sufficient to show that the jury was adequately apprised that the witnesses were referring to appellant. *See Miller v. State,* 667 S.W.2d 773, 774–76 (Tex.Crim.App.1984); *Rohlfing v. State,* 612 S.W.2d 598, 600–601 (Tex.Crim. App.1981). We overrule appellant's fourth point of error.

■ Appellant's fifth point of error is that her conviction violated the constitutional prohibition of former jeopardy. She refers to a previous criminal proceeding against her on the same charge, which was apparently dismissed before a verdict had been reached. Appellant relies solely on the appellate record in that cause, which we dismissed without jurisdiction, to support her jeopardy argument in the case at bar. As the State correctly points out, our scope of review is limited to matters in the record of the case at bar. *Evans v. State,* 622 S.W.2d 866, 868 (Tex.Crim.App.1981). We overrule appellant's fifth point of error.

In appellant's eighth point of error, she contends that the State did not prove all elements of the offense for which she was charged beyond a reasonable doubt, as required by Tex.Penal Code Ann. § 2.01 (Vernon 1974). In essence, appellant challenges the sufficiency of the evidence.

In reviewing the sufficiency of the evidence, an appellate court looks at all the evidence in the light most favorable to the verdict or judgment and determines whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Houston v. State*, 663 S.W.2d 455 (Tex.Crim.App.1984).

■ Under article 5.13a, subd. 5 of the former Election Code, current section 13.-006, the State was required to prove that appellant applied for Bernabe Luna's voter registration, or signed an application purporting to be Bernabe Luna's, and that appellant lacked agency authority to do so.

Anita Garza, who was the supervisor for the Nueces County Voter Registration Department in 1984, testified for the State. Ms. Garza stated that she was able to trace the application purporting to be Bernabe Luna's, and that appellant had turned it in to the voter registration department of Nueces County. Luna's widow testified that her husband had died several months before the card was filed and that the signature on the application was not his, though it purported to be. We find this evidence sufficient to prove beyond a reasonable doubt that appellant falsified Bernabe Luna's signature and applied for his voter registration by turning in the application card to the proper county authority.

We also find that the State proved that appellant was not acting as Luna's agent when she signed his name on the application card. As appellant argues, a lawful agent under article 5.13, subd. 5 of the former Election Code (current section 13.-006) is a parent, spouse, or child of the applicant. The State did not prove that appellant was not related to Bernabe Luna in one of these capacities, but we hold that it did prove that Luna's application card was not signed in an agency capacity, thus negating agency on appellant's part. The application card contains a signature line, below which are the words, "SIGNATURE OF APPLICANT (OR AGENT)." A box next to the line, entitled, "FOR AGENT," explains the people who may act as agents and requires the agent to identify his or her relationship to the applicant. The card was signed with a signature which was not Luna's though it purported to be, and the "FOR AGENT" box was left blank. An agent would not sign his principal's name, but would sign his own name and then indicate his agency authority. Clearly, Luna's application was not signed in an agency capacity. Rather, his signature was falsified. The State met its burden of disproving agency by the introduction of Luna's voter registration application card. We overrule appellant's eighth point of error.

Appellant's sixth point of error is similar. She contends that the trial court improperly admitted extraneous offenses into evidence, over objection. At trial, in addition to the voter registration card of Bernabe Luna, the State offered eleven other voter registration applications which also bore names allegedly forged by appellant. These were offered as part of the "res gestae" of the charged offense.

■ In general, evidence of criminal conduct which is collateral to the charge on which an accused is being tried is inadmissible. *Maynard v. State*, 685 S.W.2d 60, 66 (Tex.Crim.App.1985). However, the rule is subject to several well-established exceptions. *See, e.g., Albrecht v. State*, 486 S.W.2d 97, 100–101 (Tex.Crim.App.1972). The initial inquiry, however, concerning the admissibility of an extraneous offense is controlled by a two-part test. First, the extraneous offense must be relevant to a material issue in the case other than the defendant's character. Second, the evidence must possess probative value which outweighs its inflammatory or prejudicial effect. *Clark v. State*, No. 508–84 (Tex. Crim.App., Feb. 11, 1987) (not yet reported) (on rehearing); *Robinson v. State*, 701 S.W.2d 895, 896 (Tex.Crim.App.1985); *Williams v. State*, 662 S.W.2d 344 (Tex. Crim.App.1983).

■ Appellant was charged with intentionally and knowingly applying for the

voter registration of another person without authority to do so. "[W]here intent or guilty knowledge is an essential element of the offense which the State must prove to obtain a conviction, its materiality goes without saying." *Morgan v. State*, 692 S.W.2d 877, 880 (Tex.Crim.App.1985); *Clark*, slip op. at 1. The extraneous offenses also tend to show appellant's actions were part of a common scheme or plan, and so help to establish motive and explain appellant's conduct. This is another exception to the general rule that extrinsic offenses are not admissible. *E.g., Albrecht*, 486 S.W.2d at 100–101. We hold that the extraneous offenses were relevant to a material issue.

*Robinson v. State*, 701 S.W.2d 895 (Tex. Crim.App.1985), also outlines the factors to be considered in determining the probative value of the extraneous offense evidence. *Id.* at 898–99. As applied to the case at bar: (1) All the applications were in a similar style and were turned in by appellant; (2) all the cards were turned in just a few days apart; and (3) although alternative sources of proof that appellant committed the charged offense were available and used by the State, appellant contested the State's case by a vigorous cross-examination of the State's witnesses. Thus, we find that the extraneous offenses were probative.

■ Extraneous offenses are inherently prejudicial. *Robinson*, 701 S.W.2d at 899. Applying the *Robinson* factors for prejudice, we hold that the prejudicial effect of the extraneous offenses did not outweigh their probative value: (1) the State merely offered the other voter applications as probative evidence of appellant's intent or motive, not as criminal offenses by themselves; (2) the trial court properly instructed the jury that it could consider the extraneous offenses only to ascertain appellant's intent or her acting in accordance with a common plan; and (3) the prosecutor's jury argument concerning the extraneous matters was non-inflammatory and followed the court's jury instruction.

Appellant also argues that the State failed to show the other applications were fraudulent or to adequately link her to them. *See Landers v. State*, 519 S.W.2d 115, 120 (Tex.Crim.App.1974).

The State satisfied its burden in each instance. Anita Garza testified that each of the eleven other voter registration applications, like the one purporting to be Bernabe Luna's, was turned in to the Nueces County Voter Registration Department by appellant. Each bore a stamped filing date of early October, 1984. Ms. Garza also testified that the signature on each application was made in a similar handwriting style; moreover, the record contains two of appellant's handwriting samples, which can be compared with the signatures on all of the application forms. Tex.Code Crim. Proc.Ann. art. 38.27 (Vernon 1966). All are strikingly similar. Many of the purported applicants testified that they did not fill out the applications in issue or authorize anyone else to do so. Finally, like Bernabe Luna's, none of the cards were signed in an agency capacity but were signed as though each applicant was signing his or her own name.

The State adequately showed that appellant committed the extraneous transactions and that their probative value outweighed their prejudicial effect. The other application cards were properly admitted. We overrule appellant's sixth point of error.

Point of error number seven challenges the indictment's allegation that the offense occurred in Nueces County, Texas.

■ The State had the burden to prove that venue was proper in Nueces County. *Black v. State*, 645 S.W.2d 789, 790 (Tex. Crim.App.1983). Anita Garza, supervisor for the Nueces County Voter Registration Department at the time in question, testified that appellant turned in all of the suspect application cards, including that purporting to be Bernabe Luna's, to her office in the Nueces County Courthouse in Nueces County, Texas. Venue was thus proved. We overrule appellant's seventh point of error.

Point of error number nine alleges that a fatal variance exists between the indictment's allegations and the proof. The indictment alleges that appellant applied for "Bernabe Luna's voter registration, that "Bernabe Luna" was not the person who applied, and that appellant was not the lawful agent of "Bernable Luna" (emphasis added). This obvious typographical error could have easily been cured by a motion to quash, but appellant raises this argument for the first time on appeal. The Court of Criminal Appeals has held that an obvious typographical error in the name of the victim, especially when it has been correctly spelled elsewhere in the indictment, is not reversible. *McNeal v. State,* 600 S.W.2d 807, 807–808 (Tex.Crim.App.1980). We overrule appellant's ninth point of error.

The judgment of the trial court is AFFIRMED.