# NO. 12-10-00284-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *ERNEST LAROE MAY,*<br>*APPELLANT* | § | *APPEAL FROM THE 159TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *ANGELINA COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

A jury convicted Appellant, Ernest Laroe May, of the offenses of indecency with a child by exposure and indecency with a child by contact. After Appellant pleaded true to two enhancement paragraphs contained in the indictment, the jury assessed Appellant's punishment at imprisonment for ninety-nine years. Appellant presents one issue in which he contends there is insufficient evidence to identify him as the perpetrator of the offenses.

## BACKGROUND

K.O., the father of the victim, testified that he was at his residence when his four-year-old daughter, C.O., came in and told him that a man took her sister, Jane Doe, age eight, into a nearby trailer. C.O. pointed out the trailer house to her father, K.O. K.O. knocked on the door and yelled for his daughter. He saw a shirtless white man wearing gold shorts run across the end bedroom of the trailer. The father yelled again for Jane Doe. A male voice from inside the trailer shouted that there was nobody there by that name. The daughter then came to the door of the trailer. Her father asked her what she was doing in the house. She replied that "he gave her five dollars." A person K.O. identified as Appellant came out of the house and said that nothing had happened.

Hudson police officer Reuben Kimball appeared while K.O. and Appellant waited outside Appellant's trailer. Appellant denied to Officer Kimball that any girl had been inside his trailer. Kimball noted Appellant was sweating profusely.

Officer Kimball then went to K.O.'s house to talk to Jane Doe. Doe told him that a man came to the door and asked if she wanted to come in. She said that, when she went in, they went to the front bedroom where the man took off his pants. The man then showed her his penis and wiggled it with his hand. He touched her on the outside of her panties in an attempt to touch her "private part." She told Officer Kimball that the man had a dragon and skeleton on his legs. Officer Kimball recovered the five dollars that Appellant had allegedly given Jane Doe from Jane Doe's mother.

Officer Kimball returned to Appellant's trailer, but, as he approached, Appellant went inside the trailer and shut the door. Officer Kimball knocked but got no response. He entered the trailer and found Appellant lying on some sheets on the floor. Appellant became confrontational, and Officer Kimball struggled to place handcuffs on him.

Hudson police officer James Caspar testified that, after obtaining a search warrant, he took photographs of Appellant's body. He identified the tattoos on Appellant's legs as a Mardi Gras mask, a sun with radiating points, a spider web, a Joker Mardi Gras mask, and two others that are not identifiable.

Jane Doe testified that she was playing with her sister and a friend when a man pulled her inside his trailer. He paid her five dollars and took her to a bedroom where he showed her his wrong place and wiggled his penis at her. The man, she said, grabbed her crotch area on the outside of her panties. She told the court that the man had a tattoo of a fire breathing dragon on his right leg and tattoos of a few skeletons on his legs. The State never asked Jane Doe to identify Appellant as the man in question.

C.O., the victim's little sister, testified at trial that "[t]he boy gave [Jane Doe] five dollars" to go in the trailer. She told the court that he pulled her into the trailer. She immediately ran home and told her parents what had happened and pointed out Appellant's trailer as the one where her sister was. At trial, C.O. was not asked to identify Appellant. There is no evidence that she identified Appellant on the day of the offense. She testified to no traits or characteristics that might help identify the man who pulled her sister into the trailer.

Appellant testified that at the time in question, he was in the trailer with Jason Wright drinking and using amphetamine. Jason Wright had tattoos of dragons and skulls on his leg, Appellant told the court. He steadfastly denied that Jane Doe had ever been in his trailer. However, he testified that Jason left when the police arrived. On cross examination, he said his recollection of that day's events was good. He could not remember, however, K.O.'s calling for Jane Doe and knocking on his door. He denied ever seeing Jane Doe.

Appellant admitted writing several letters to the judge saying that he did not remember any of the events of that day. He did not remember seeing or having anyone in his trailer. Appellant admitted that he lied in his letters to the judge. He also admitted that he had never mentioned Jason to the police or in his letters to the judge.

### SUFFICIENCY OF THE EVIDENCE OF IDENTITY

Appellant argues that the victim, in her testimony, never identified Appellant as the person who molested her. Throughout her testimony she refers to her assailant only as "that man." There is no evidence that she identified him at the scene. Appellant contends the conglomeration of tattoos on his legs do not match the victim's description of them as dragons and skeletons. The State never asked Jane Doe's little sister to identify Appellant as the person who pulled Jane Doe into Appellant's trailer. Therefore, Appellant argues there is a total lack of direct evidence that he committed the crime alleged.

Appellant maintains that his mere presence at the scene of the incident is insufficient to sustain the jury's verdict. Neither the testimony of the father, K.O., nor that of Officer Kimball negated the possibility that another person was in the trailer. Therefore, Appellant argues that there is nothing in the record to contradict his testimony that another man with tattoos more nearly matching those Jane Doe described was in the trailer at the time the crime occurred.

**Standard of Review**

In reviewing the sufficiency of the evidence, the appellate court must determine whether, considering all of the evidence in the light most favorable to the verdict, the jury was rationally justified in finding the defendant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Considering the evidence "in the light most favorable to the

verdict" under this standard requires the reviewing court to defer to the jury's credibility and weight determinations, because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Brooks*, 323 S.W.3d at 899.

## Applicable Law

The State must prove beyond a reasonable doubt that the defendant is the person who committed the charged offense. *Johnson v. State*, 673 S.W.2d 190, 196–97 (Tex. Crim. App. 1984), *overruled on other grounds by Geesa v. State*, 820 S.W.2d 154 (Tex. Crim. App. 1991). Identity may be proved by direct or circumstantial evidence. *Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986). When there is no direct evidence of the perpetrator's identity elicited at trial, no formalized procedure is required for the State to prove identity as an element of an offense. *Roberson v. State*, 16 S.W.3d 156, 167 (Tex. App.–Austin 2000, pet. ref'd); *Sepulveda v. State*, 729 S.W.2d 954, 957 (Tex. App.–Corpus Christi 1987, pet. ref'd). For the purpose of proving guilt beyond a reasonable doubt, direct and circumstantial evidence are equally probative. *McGee v. State*, 774 S.W.2d 229, 238 (Tex. Crim. App. 1989). The sufficiency of the evidence is determined from the cumulative effect of all the evidence; each fact in isolation need not establish guilt. *Alexander v. State*, 740 S.W.2d 749, 758 (Tex. Crim. App. 1987). The absence of in-court identification does not render the evidence insufficient if there is other evidence sufficient to identify the defendant as the perpetrator. *Couchman v. State*, 3 S.W.3d 155, 162 (Tex. App.–Fort Worth 1999, pet. ref'd).

## Discussion

The victim's little sister pointed out to her father, K.O., the trailer that her sister had entered. After a great deal of knocking on the trailer door, his daughter emerged followed shortly by Appellant who told K.O. that nothing happened. However, this was only after K.O. had seen a white man running through the bedroom in shorts. Appellant admitted he had been wearing shorts that day. The two came to the door only after someone in the house had yelled that there was no Jane Doe in there. When her father asked her what she was doing in the trailer, Jane Doe told her father that "he gave me five dollars." Later, Appellant denied Jane Doe had ever been in his trailer.

The jury's refusal to believe Appellant's testimony is understandable and well warranted.

4

His testimony contradicted not only that of the State's witnesses but also contradicted what he had previously claimed. Appellant admitted that he lied in the letters he wrote the judge. He admitted that he had never before mentioned Jason Wright's presence in the trailer to either the police or the judge. The jury was entitled to consider the Jason story as a fiction contrived in desperation.

The father's testimony regarding the circumstances surrounding his discovery of his daughter in the trailer with Appellant, her explanation that she was there because "he gave me five dollars," which she still had, her description of Appellant's tattoos, and the photographs of the tattoos, taken together, are sufficient evidence to circumstantially prove that Appellant was the person who exposed himself and touched the child. Appellant's sole issue is overruled.

## DISPOSITION

The judgment of the trial court is ***affirmed***.

**BILL BASS**
Justice

Opinion delivered March 31, 2011.
*Panel consisted of Worthen, C. J., Griffith, J., and Bass, Retired J., Twelfth Court of Appeals, sitting by assignment.*

(DO NOT PUBLISH)